KEEGAN v. ESTATE OF MALONE.

1. **Domestic Relations:** SERVICES BY MEMBER OF FAMILY: PRESUMED TO BE GRATUITOUS. Where it is shown that a person rendering services was a member of the family of the person served, and receiving support therein, either as a child, a relative or a visitor, a presumption of law arises that the services were gratuitous, and a recovery for such services cannot be had without showing an express promise to pay for them, or such facts and circumstances as will warrant the jury in finding that they were rendered in the expectation by one of receiving, and by the other of making, compensation therefor.

2. **Practice in Supreme Court:** PAPERS FILED TOO LATE: COSTS. Where an amended abstract and argument were filed after the time agreed upon by the parties, the court overruled a motion to strike them from the files, but taxed the costs of printing them to the delinquent party.

*Appeal from Allamakee Circuit Court.*

THURSDAY, DECEMBER 6.

THE plaintiff claims of the estate of Henry Malone, deceased, $1,000 for boarding deceased from December, 1870, to December, 1880, $1,200 for work on his farm, and $190 for money advanced to him. The cause was referred, and, upon the referee's report, judgment was rendered in favor of the administrator for costs. The plaintiff appeals.

*Brown & Portman,* for appellant.

*Boomer & Stillwell,* for appellee.

DAY, CH. J. This action is at law, and the report of the referee, upon approval by the court, stands as the verdict of a jury, and will not be disturbed unless clearly unsupported by the evidence. The facts found by the referee, and fairly supported by the evidence, are as follows:

"1. That in 1855, and for some time previous thereto, H. Malone resided in Allamakee county, Iowa, with his brother,

E. Malone, owning adjoining farms and working them in common, and living together in a home on the land of H. Malone.

"2. That H. Malone, deceased; E. Malone, Alice Keegan, Mrs. Duffy and Mrs. Ryan were brothers and sisters.

"3. That in 1855, Mrs. Keegan came from New York to live with H. and E. Malone, at their invitation, bringing with her her household furniture and effects, and bringing her son Henry, aged three and one-half years, and lived with H. and E. Malone for some three years, she doing the housework for them, and also out door work; at the expiration of which time H. and E. Malone separated, to live apart, and at the same time gave to Mrs. Keegan $75 to return to New York.

"4. That Mrs. Keegan and her son started with H. Malone on her return to New York, but after going a short distance turned back, and she and her son continued to live with Henry Malone on his place until 1869, during which time she did the housework, and also a good deal of out door farm work of all kinds, for H. Malone, while the boy performed for Malone such work as farmers' boys usually do.

"5. That about 1869, Henry Malone bought and gave to Henry Keegan, either in payment for work performed or as gift, forty acres of land, the legal title being vested in Mrs. Keegan, and at different times subsequent to 1869 gave Henry Keegan personal property, consisting of horses, wagon, sled, two cows and two heifers.

"6. In 1869, Henry Keegan and his mother left Malone and moved on to the forty acres owned by Henry Keegan,— *Henry Keegan working the farm* and having the proceeds thereof, and his mother keeping house for him.

"7. That H. Malone lived apart from Mrs. Keegan and her son for about a year after they moved on to Henry Keegan's place, a part of the time living on his own place, and a part of the time boarding with Mrs Duffy.

"8. Sometime in 1870, H. Malone went to live with Henry Keegan and his mother, and continued to live there up to the time of his death.

"9. That Henry Keegan was in poor health from the time he moved on to his own farm up to his death, a large portion of the time being unable to do any work, and being at great expense for medical attendance and medicine, and at no time able to perform a man's work at farming, but could do only light work on the farm and around the house.

"10. That Henry Keegan died in 1879, leaving his mother as his only heir.

"11. Henry Malone died in December, 1880, leaving Mrs. Keegan, Mrs. Duffy, Mrs. Ryan, and E. Malone, his only heirs.

"12. That Mrs. Keegan never claimed any ownership or control over the forty acres, or of the produce grown thereon, or of the stock, until after the death of her son, when she claimed the same as heir at law.

"13. H. Malone's farm of one hundred and sixty acres adjoined Henry Keegan's farm, and lay in common with it, there being no division fence.

"14. That Henry Malone and Henry Keegan worked their farms together, Henry Malone working on H. Keegan's farm with him and his mother, and he and his mother working on H. Malone's.

"15. That the crops grown on seven or eight acres of the Keegan farm, situated on the hill, were cut, stacked, threshed and kept with the crops grown on Malone's farm, there being no division made of the same. But the crops grown on the bottom-land on the forty were kept separate from Malone's.

"16. The stock owned by H. Keegan and Malone all ran together, and was all fed together in common, from the produce grown on both farms.

"17. The produce raised on both farms was used for the common support of the family, Malone contributing flour, meat, groceries, etc., to the support of the family.

"18. There was never any accounting, reckoning, or settlement made between the parties.

"19. The evidence does not show an express contract between Mrs. Keegan and deceased, that Mrs. Keegan should

receive pay for work and services performed, or board furnished, or any promise on the part of deceased to pay for such services and board, or any expectation on the part of claimant that she was to receive pay therefor.

"20. The evidence does show that Mrs. Keegan, Henry Malone and Henry Keegan lived together as members of one family until the death of Henry Keegan, and after his death Mrs. Keegan and H. Malone continued to live together till his death."

Appellant concedes that the claim for services prior to 1869 is probably barred by the statute of limitations, and does not urge that portion of the claim, but insists that plaintiff is entitled to recover for the board. Under the doctrine of *Scully v. Scully*, 28 Iowa, 548, the plaintiff is not entitled to recover. In that case it is said: "Where it is shown that the person rendering the services is a member of the family of the person served, and receiving support therein, either as a child, a relative, or a visitor, a presumption of law arises that such services were gratuitous, and in such case, before the person rendering the service can recover, the express promises of the party served must be shown, or such facts and circumstances as will authorize the jury to find that the services were rendered in the expectation, by one of receiving, and by the other of making, compensation therefor." See *Hall v. Finch*, 29 Wis., 278; *Mountain v. Fisher*, 22 Wis., 93; *Lynn v. Lynn*, 29 Pa. St., 369; *Defiance v. Austin*, 9 Pa. St., 309; *Fitch v. Peckham*, 16 Vt., 150.

1. DOMESTIC relations: services by member of family: presumed to be gratuitous.

II. The appellant submitted with the case a motion to strike from the files appellee's amended abstract and argument, because not filed within the time agreed upon between the parties. The motion is overruled, but no costs will be taxed to the appellant for printing appellee's abstract and argument.

2. PRACTICE in supreme court: papers filed too late: costs.

AFFIRMED.